# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK STEWARD, by and through his guardian ad litem, SHANIKKIA HOLLEY, | 1:09cv0886 DLB |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Roderick Steward ("Plaintiff"), by and through his Guardian ad Litem Shanikkia Holley, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed his application on May 13, 2005, alleging disability since June 2, 1999, due to seizures and blackouts.  AR 124, 128.  Plaintiff was seven years old at the time of filing.  AR 124.  After Plaintiff's application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ").  AR 23-27, 30-34, 35-36.  ALJ Edward Steinman held a hearing on September 8, 2008, and denied benefits on September 30, 2008.  AR 5-17, 276-304.  The Appeals Council subsequently denied review.  AR 4.

Hearing Testimony

ALJ Steinman held a hearing on September 8, 2008, in Bakersfield, California.  Plaintiff appeared with his attorney, Geoffrey Hayden.  Plaintiff's mother appeared and testified, as well as medical expert William Rack, M.D.  AR 276.

Shanikkia Holley, Plaintiff's mother, testified that as her son gets older, he gets more headaches and nosebleeds.  Plaintiff gets nosebleeds two to three times per week, and both his nosebleeds and headaches are caused by physical activity.  AR 281-282.  He also gets nosebleeds at home if it is hot in the house, though it still depends on what he's doing.  Plaintiffs gets headaches, which last about an hour, two to three times a week.  AR 282.  Plaintiff's doctor has not prescribed any medication for the headaches and told him to take Tylenol.  AR 284-285.  His headaches go away when he lays down and goes to sleep.  AR 282-283.

Plaintiff has not blacked out in about six months and Ms. Holley explained that she keeps him out of any situations where he could blackout.  AR 287.  When he blacked out six months ago, his older brother head-butted him while they were playing.  Ms. Holley brought Plaintiff inside, "got him out of" it, gave him Tylenol and made him sit down for a while.  AR 288.  This made him feel better.  AR 289.

Ms. Holley testified that Plaintiff was in sixth grade, in regular classes.  He received speech and language assistance in the past, but was no longer receiving such assistance.  Though he was now doing better, Plaintiff continues to stutter "a little bit."  AR 285.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff is allowed to go to recess, but Ms. Holley does not allow him to play football or other sports until they know what's going on with his head.  AR 285.  Plaintiff was doing well in school and getting good grades.  He gets along well with his two brothers and his sister and has friends that he plays with after school.  AR 286.

Ms. Holley explained that at home, Plaintiff doesn't give her too many problems and is a good kid.  He is assigned chores and is able to complete them.  AR 286-287.

Plaintiff testified that he last had a headache the day before the hearing and it "hurt[] bad."  He usually takes one Tylenol and then goes to sleep.  When he wakes up, his head stops hurting.  AR 290.  Prior to that headache, his last headache was about a week ago.  AR 291.  He thought his headaches occurred once or twice a week.  AR 291.  During recess, he plays basketball and sometimes plays "tagger," and he does not feel ill when he plays outside.  AR 291. He has friends in school and gets along with them.  He also gets along with his brothers and his sister.  AR 292.

When questioned by his by attorney, Plaintiff testified that he gets nosebleeds at school but does not go to the nurse.  When he has headaches, he sees "black things" and spots.  AR 293. He rated his headache pain at a five or six out of ten.  His ears sometimes ring when he gets headaches.  AR 294.

Medical expert Dr. Rack testified that he did not think that Plaintiff had a seizure disorder.  Testing did not reveal evidence of a disorder and he is not being treated for a seizure disorder.  Plaintiff's headaches could be migraines or related to musculoskeletal issues or tension.  The headaches did not last long and did not appear to be related neurologically to a physical examination abnormality.  AR 299.  Dr. Rack explained that the irregularity mentioned in the MRI would not likely be related to the headaches, but he recommended a repeat scan.[2]

Dr. Rack did not believe that Plaintiff had an impairment that met or equaled a listed impairment.  AR 299.  Dr. Rack also did not see any marked impairments in any of the domains examined in determining whether Plaintiff had a functionally equivalent impairment.  He also did

---

[2] A request for a repeat MRI was denied as "cost prohibitive."  AR 12, 204-205.

not believe that Plaintiff had any "less than marked" impairments.  Dr. Rack believed that Plaintiff's impairment was non-severe.  AR 300.

When questioned by Plaintiff's attorney, Dr. Rack testified that Plaintiff's nosebleeds may be related to an irregularity in his nose and did not necessarily represent something wrong neurologically.  Although it was possible that it was neurological, such a connection would be rare.  AR 301.  Dr. Rack did not see any evidence of nosebleeds in the medical records.  AR 300.

As to Plaintiff's blackouts, Dr. Rack testified that they could have been related to "breath holding spells," which wouldn't be related to a neurological issue and would be benign in nature. The irregularities on Plaintiff's MRI are common changes that often do not represent a significant abnormality.  AR 301.

Medical Record

Plaintiff saw neurologist Asela P. Jumao-as, M.D., for evaluation of his headaches on April 8, 2005.  His mother reported an increase in headaches for the past two weeks.  He was taking Ibuprofen, which seemed to help.  Ms. Holley also described episodes of unconsciousness which began at age 3.  Dr. Jumao-as described Plaintiff as an alert, bright 7 year old boy. Plaintiff's neurological examination was normal.  Dr. Jumao-as diagnosed probable migraines and episodes of loss of consciousness, rule out seizures versus breath holding spells.  Dr. Jumao-as recommended an MRI in light of the presence of café au lait spots and the recent observation of stuttering.  An EEG was also ordered and Plaintiff was started on suppression therapy with Ciproheptadine at bedtime.  Plaintiff could continue with Ibuprofen as needed.  AR 216-217.

Plaintiff underwent an MRI scan of his brain on April 21, 2005.  The test showed punctuated areas of increased signal intensity mainly in the periventricular white matter in both parietal regions.  These were "non-specific" findings which could be secondary to ischemic, demyelinating or dysmyelinating disease.  AR 214.

On April 27, 2005, Dr. Jumao-as wrote a note to Plaintiff's school indicating that Plaintiff should avoid exposure to heat because of his migraines.  Dr. Jumao-as also noted that Plaintiff stuttered and recommended a speech evaluation.  AR 212.

On September 27, 2005, Plaintiff was evaluated by Chuck K. Lee, M.D., for possible seizures and headaches.  Plaintiff's mother reported blackouts starting at age 3, which seemed to worsen after "playing hard."  She also reported that Plaintiff began having headaches about 2 years ago.

On examination, Plaintiff stuttered when reading a passage.  He had two café au lait spots.  Sensory and motor functions were normal and deep tendon reflexes and muscle tone were symmetrical.  Dr. Lee noted that Plaintiff seemed to be responding to cyproheptadine, with no further blackout episodes or seizure activity.  MRI records were not available for review, though Plaintiff's mother described them as normal.  Dr. Lee found Plaintiff to be otherwise healthy and able to carry out normal activities.  Plaintiff still noted headaches after exertion, which Dr. Lee found to be compatible with migraines.  Other than the stuttering, Plaintiff's physical examination was normal.  Dr. Lee opined that Plaintiff would need to continue follow-up with the neurologist for his migraines and blackout episodes.  It was unclear whether Plaintiff had a seizure disorder, as he had not been prescribed any antiseizure medications.  He also recommended that Plaintiff be evaluated by a speech therapist so that appropriate speech therapy could be initiated.  AR 221-222.

On October 3, 2005, Plaintiff underwent a speech and language assessment through his school district.  The speech therapist determined that Plaintiff was an excellent candidate for a speech program with emphasis on decreasing dysfluent speech patterns.  AR 223-224.

In October 2005, Plaintiff's teacher, Katharine Love, stated the only condition that she was aware of was Plaintiff's stuttering.  She noted that he had just qualified for speech services.  AR 146, 189-197.

On November 10, 2005, State Agency physician Lavanya Bobba, M.D., determined that Plaintiff had a less than marked limitation in acquiring and using information, no limitation in attending and completing tasks, a less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, no limitation in caring for himself and a less than marked limitation in his health and physical well-being.  AR 225-232.  This was affirmed on January 30, 2006.  AR 233-239.

In October 2006, after a year of speech therapy, Plaintiff's teacher noted that he completes assignments, is responsible and stays on task, though he can get frustrated and have difficulty dealing with disappointment. Plaintiff was described as a "nice boy" and his smile "lights up the room." AR 191. Plaintiff spent 97 percent of his day in the general education program. AR 193.

Plaintiff saw Juliane Tran, M.D., on August 29, 2008, for a neurological examination. Plaintiff complained that he had "spells sometimes." Plaintiff's mother told Dr. Tran that Plaintiff has had seizures since he was five years old and described "spells" during which Plaintiff's eyes roll up, his upper extremities/arms get flaccid and he has decreased response time. She explained that these spells last for five minutes and that if Plaintiff was not supported during that time, he would fall down. Plaintiff also complained of headaches. He participated in normal activities, though he did not play football. AR 251-252.

Plaintiff's neurological examination was normal. His mental status was fair to good for his age. Dr. Tran noted subjective reports of periodic "spells," but found that it was unclear whether these spells were partial seizures or not. There was no indication that Plaintiff previously been on seizure medications. He described the MRI findings as unspecific. Although there were no functional limitations per se, Dr. Tran opined that because of Plaintiff's transient spells, his limitation barring contact sports at school should continue as a precaution. Plaintiff should never be exposed to unprotected heights, also as a precaution. AR 252-261.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of a seizure disorder, nonspecific, and headaches. He did not have an impairment or combination of impairments that met or equaled a listed impairment. The ALJ also determined that Plaintiff did not have an impairment or combination of impairments that functionally equaled a listing. In so finding, the ALJ determined that Plaintiff had no limitation in acquiring and using information, no limitation in attending and completing tasks, no limitation in interacting and relating with others, a less than marked limitation in moving about and manipulating objects, no limitation in caring for himself and a less than marked limitation in his health and physical well-being. AR 11-17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In determining disability in children, the Commissioner uses a three-step sequential evaluation procedure.  20 C.F.R. § 416.924(b)-(d).  The relevant inquiry at step one is whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(b).  If not, step two requires the fact finder to determine whether the child has a medically severe impairment or combination of impairments.  20 C.F.R. § 416.924(c).  Plaintiff bears the burden of demonstrating a severe impairment.  20 C.F.R. § 416.924.  If the impairment is a "slight abnormality or a combination of slight abnormalities that cause no more than a minimal functional limitation," the Commissioner will find that the child does not have a severe impairment and therefore is not disabled.  20 C.F.R. § 416.924(c).

Step three requires determining whether the severe impairment meets or equals in severity any impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §

416.924(d).  If such an impairment exists, the Commissioner must find the child disabled.  *Id.*  If the child's impairment does not meet or medically equal any listing, then the Commissioner must determine if the limitations caused by the impairment functionally equal a listing in the Listing of Impairments.  *Id.*  To do so, the Commissioner will assess all of the functional limitations caused by the child's impairments in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) Interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well being.  *See* 20 C.F.R. § 416.926a(a)-(b).

To functionally equal a listing, the impairments must result in marked limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. 416.926a(e)(2).  It means " 'more than moderate' but 'less than extreme."  *Id.*  On the other hand, an "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).  It is the rating given to the "worst limitations."  *Id.*

## DISCUSSION

As his sole argument, Plaintiff contends that the ALJ improperly assessed Plaintiff's testimony and that of his mother, Ms. Holley.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).  However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive."  *Id.*  Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing."  *Id.*

> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the

8

statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand).  Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."  *Fair,* 885 F.2d at 603; *see also Thomas,* 278 F.3d at 958-59.

Similarly, the ALJ is required to consider lay witness testimony in determining whether a claimant is disabled.  *Bruce v. Astrue,* 557 F.3d 1113 (9th Cir. 2009); *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).  Such testimony is competent evidence and " cannot be disregarded without comment."  *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir.1996).  If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness."  *Id.*  Further, the reasons "germane to each witness" must be specific.  *Stout v. Comm'r,* 454 F.3d 1050, 1054 (9th Cir.2006) (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

As a threshold matter, the Court notes that Plaintiff's argument is mainly boilerplate and lacks specificity.  Although Plaintiff claims that the ALJ "does not offer a single legally sufficient reason to reject" the testimony of Plaintiff and his mother, he does not identify any allegedly rejected testimony.  Nor does Plaintiff explain how the RFC finding was inconsistent with Plaintiff's testimony and that of his mother.  His failure to point to specific testimony renders Plaintiff's argument conclusory and unhelpful to the Court's analysis.

In any event, a comparison of the hearing testimony and the ALJ's findings reveals that the ALJ credited the testimony.  For example, in finding that Plaintiff had no limitations in acquiring and using information, the ALJ noted that Plaintiff does well in school, no longer needs speech therapy, has not been in special education classes though he had additional help, and is able to play at school.  AR 13.  These statements are entirely consistent with the testimony. Ms. Holley testified that Plaintiff plays at recess, gets good grades in school, attends regular classes, no longer receives speech therapy, is a "good kid" and mostly completes his assigned chores.  AR 285-287.  Similarly, Plaintiff testified that he does well in school and participates in recess.  AR 291.  There is nothing in either Ms. Holley's testimony or Plaintiff's testimony that

suggests he has any limitation in this domain. Although Ms. Holley testified that Plaintiff still stutters "a little bit," this does not necessarily suggest any limitations in this domain, and Plaintiff does not argue otherwise.

In finding that Plaintiff had no limitations in attending and completing tasks, the ALJ noted that "nothing in the record or the testimony" suggests a limitation in this area. AR 14. Indeed, Ms. Holley's testimony that Plaintiff does well in school and does his chores at home is consistent with this finding. AR 285-287.

The ALJ next determined that Plaintiff had no limitation in interacting and relating with others. AR 15. He explained that "the record and testimony show that the claimant has friends at home" and "gets along with his family." AR 15. Ms. Holley testified that Plaintiff has friends at school and gets along well with his brother and sisters. AR 285-286. Plaintiff also testified that he gets along with his friends at school, as well as his siblings. AR 292.

In determining that Plaintiff had a less than marked limitation in moving about and manipulating objects, the ALJ found such a limitation based on Plaintiff's need for seizure precautions. The limitation did not reach the level of "marked," however, because Plaintiff is able to play with his friends, participates in physical education at school and plays basketball and tag. AR 15. Again, this is wholly consistent with the testimony of Plaintiff and his mother. In fact, given that the medical record provides no evidence of a seizure disorder and Dr. Rack testified that Plaintiff did not appear to have a seizure disorder, it appears that the ALJ relied on Ms. Holley's testimony related to Plaintiff's "blackouts" to find such an impairment. AR 12, 287.

Next, the ALJ determined that Plaintiff did not have any limitations in caring for himself. AR 15. As Plaintiff's mother testified, Plaintiff no longer needed speech therapy. AR 285. There was simply no testimony from either Ms. Holley or Plaintiff that indicated he had any issues in caring for himself.

Finally, the ALJ found that Plaintiff had a less than marked limitation in his health and physical well-being. AR 17. The ALJ based the limitation on Plaintiff's seizure disorder, though he found it to be less than marked, in part because Plaintiff plays sports and participates in

physical education at school, his headaches are short-lived and controlled by Tylenol and his blackouts appear controlled by medication.  AR 17.  Again, there is no contradictory testimony. Ms. Holley testified that Plaintiff's headaches, for which he takes Tylenol, last about an hour and are remedied by sleep.  AR 282-283.  Plaintiff testified to the same facts.  AR 291.  Ms. Holley also testified that Plaintiff has not had a blackout for the past six months.  AR 287.  Finally, both Plaintiff and his mother testified that Plaintiff participated in recess at school, with Plaintiff adding that he plays basketball and tag.  AR 285, 291.

Based on the above, the Court finds that the ALJ did not err in his treatment of the hearing testimony.  In fact, although the ALJ noted in his boilerplate section that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent they are inconsistent" with the ALJ's findings, there is simply no testimony that contradicts the ALJ's findings.

The ALJ's treatment of the hearing testimony is supported by substantial evidence and free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Roderick Steward.


IT IS SO ORDERED.

   Dated:    April 8, 2010                            /s/ Dennis L. Beck
                                           UNITED STATES MAGISTRATE JUDGE